Robert P. Fores, SBN 119235
rfores@foresmacko.com;
FORES - MACKO - JOHNSTON, INC.
1600 "G" Street, Suite 103
Modesto, California 95354
Tel: (209) 527-9899/Fax: (209) 527-2889

Ronald La Force, SBN 32927
ronaldlouislaforce@gmail.com
LAW OFFICES OF RONALD LA FORCE
1120 Scenic Avenue
Modesto, California  95355
Tel: (209) 602-5711/Fax: (209) 575-4356

John Burton, SBN 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California  91103
Tel: (626) 449-8300/Fax: (626) 448-4417

Attorneys for Plaintiff Darlene Ruiz, Individually
and as Co-Successor-in-Interest to Trevor R. Seever, Deceased

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Darlene Ruiz, individually and as Co-Successor-in-Interest for Trevor R. Seever, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MODESTO, MODESTO POLICE DEPARTMENT, FORMER CHIEF OF POLICE GALEN CARROLL, FORMER OFFICER JOSEPH LAMANTIA and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF DARLENE RUIZ' COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)<br>2. Fourteenth Amendment – Deprivation of Familial Relations (42 U.S.C. § 1983)<br>3. Municipal Liability – Failure to Train and Supervise (42 U.S.C. § 1983)<br>4. Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>5. Cal. Civ. Code § 52.1 (Survival)<br>6. Battery (Wrongful Death)<br>7. Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff's state-law claims are so related that they form part of the same case or controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

3. Plaintiff's claims arise out of a course of conduct involving officials of the Modesto Police Department (MPD) in the County of Stanislaus, State of California, and within this judicial district.

## PARTIES

### A. Plaintiff

4. Plaintiff Darlene Ruiz is the mother of Decedent Trevor R. Seever. Accordingly, she has standing to allege individual claims and wrongful death pursuant to Cal. Civ. Proc. Code § 377.60(a).

5. There is no probate action pending for the administration of Decedent's estate. Plaintiff Ruiz is Decedent's co-successor-in-interest pursuant to Cal. Civ. Proc. Code § 377.30. She has filed the required declaration pursuant to Cal. Civ. Proc. Code § 377.32. Decedent's father David Seever has equal standing to serve as successor-in-interest, and he is proceeding as a co-successor-in-interest as well. Plaintiff Ruiz alleges that no other person has standing to be a successor-in-interest.

### B. Defendants

6. Defendant City of Modesto ("City") is a chartered city formed and operating under the laws of California and its charter. Defendant MPD is an independent entity subject to suit. Plaintiff is informed and believes that Defendant Galen Carroll was the MPD Chief of Police from January 2013 until he retired on December 25, 2020. He is sued in his individual capacity as the ultimate decision maker, final policymaker, and supervisor for the MPD during the time leading up to the shooting of Trevor Seever.

7. At the relevant times, Defendant Joseph Lamantia was an MPD officer. (He has been terminated.) He is sued in his individual capacity for actions taken under color of state law and within the scope of his employment with Defendants City and MPD.

8. The true names of defendants Does 1 through 10 are presently unknown to Plaintiff, who therefore sues each by such fictitious name; but upon ascertaining the true identity of a defendant Doe, Plaintiff will amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name.

9. Defendants acted in concert, within the scope of their employment, and under color of state law. Each had the opportunity to intervene to prevent others from depriving Plaintiff and Decedent of their constitutional rights and failed to do so.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10. Plaintiff timely filed the appropriate administrative claim more than 45 days ago. The claim has not been acted upon. This lawsuit is timely.

**FACTS**

11. Trevor Seever lived most of his life in Modesto. He has a Bachelor's Degree from San Jose State. At the time of his death he was living with his mother Darlene, stepfather Ray Ruiz, and sister Allison in Modesto.

12. On the morning of December 29, 2020, Trevor inexplicably became manic and irrational. He left home and texted family members messages that made little sense. He was angry with his mother. Trevor had no history of guns or violence, but falsely texted that he purchased a firearm. Trevor called his mother. He said "I'm coming over, and you guys need to leave the house and call 911. Darlene told her daughter Allison, Trevor's sister, to call 911. Darlene, her husband Ray and Allison left their home in a vehicle, parking a short distance away, and remained in contact with a 911 dispatcher. Trevor returned home, made a mess and then left. Darlene, Ray and Allison were concerned about Trevor's mental state. They were shaken and perplexed, but never in danger. They saw Trevor walking and gave the dispatcher his location and direction of travel. Their objective was to get help for Trevor.

13. Multiple MPD officers responded. Former Officer Joseph Lamantia activated his body camera, which provides a real time record of the tragedy that followed. Lamantia found Trevor sitting on steps on the grounds of a church smoking marijuana. Trevor fled

across a lawn. Lamantia jumped out of his car and gave chase with his pistol drawn, although he was not being threatened and had seen no firearm.

14. After rounding a corner that provided cover and concealment were Lamantia actually concerned that Trevor was armed and dangerous, Lamantia stopped, stood out in the open and yelled at Trevor, who was still running away, to "Get down." Without giving Trevor an opportunity to comply or a warning that he was about to shoot, Lamantia fired four shots from 170 feet, missing three while hitting Trevor once in the back. Trevor yelled in pain as he fell. The back wound was not lethal.

15. Trevor got up to his knees and turned to face Lamantia, who closed the distance, stopping about 80 feet away. Trevor followed Lamantia's orders to raise his hands. Lamantia should have repeated his order for Trevor to lie down because Lamantia knew he shot Trevor, and the gunshot wound was obviously making it difficult for Trevor to keep both hands raised. Trevor lowered his right hand, then raised it again when Lamantia yelled. The second time Trevor's right hand came down, Lamantia fired three more rounds while yelling commands, missing once, lacerating his liver with a second bullet and perforating his heart with a third. Lamantia's video shows that Trevor again raised both hands as the last three shots rang out. He had no weapon.

16. Other officers and paramedics responded. Darlene saw her son loaded onto the ambulance, and he was clearly alive. MPD officers assured her that although he had been shot, Trevor was being treated appropriately and would be fine. She was told that because of the COVID-19 pandemic she could not accompany her son to the hospital. She went home as instructed to wait for further word.

17. Trevor bled out and was pronounced dead shortly after arrival at the emergency room. MPD officers aware Trevor had died came to the home. Darlene assumed because the officers did not say otherwise that Trevor was at the hospital, and that his wounds were not life-threatening. She was interviewed on video for almost an hour. As the interview wrapped up she asked how her son was doing, and was told, "He didn't make it." She screamed in anguish and collapsed to the floor.

18.     The MPD falsely informed Darlene that her son's remains were already at the coroner's office where, it turned out, she could not see him for 6 days. In fact Trevor was still at the hospital. The MPD's callous behavior after the shooting intensified the emotional impact of Plaintiff's learning her child had met with a violent death.

## FIRST CLAIM FOR RELIEF

Fourth Amendment – Excessive Force, 42 U.S.C. § 1983

(Against Defendant Lamantia and Does)

19.     The foregoing allegations are incorporated as if re-alleged herein.

20.     Defendant Lamantia without legal justification or necessity, and without warning, shot and killed Trevor Seever, depriving Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. Trevor Seever did not pose an imminent threat of death or serious bodily injury to Defendant Lamantia, or to anyone else.

21.     Defendant Lamantia's shooting of Trevor Seever violated his training, POST standards, the newly enacted AB 392, which amended Cal. Penal Code § 835a, and the constitutional threshold of *Tennessee v. Garner*, which allows for deadly force only "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," such as where "the suspect threatens [an] officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm," and "where feasible, some warning has been given."

22.     Plaintiff brings this claim individually and as the co-successor in interest to Decedent, and seeks damages for her own emotional distress and anguish, wrongful-death damages, including her loss of Decedent's support and gifts, love, society and companionship, protection, affection, and moral support, and survival damages, including Decedent's pain and suffering, loss of life, and loss of enjoyment of life, in addition to punitive damages, as alleged below.

23. The conduct of Defendants Lamantia and Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

Fourteenth Amendment – Familial Relations and Due Process, 42 U.S.C. § 1983

(Against Defendants Lamantia and Does)

24. The foregoing allegations are incorporated as if re-alleged herein.

25. Plaintiff has a cognizable interest under the Due Process Clause of the Fourteenth Amendment to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with her son, the Decedent.

26. Decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

27. Defendant Lamantia's shooting Decedent in the back without warning as he was fleeing and not posing a threat to anyone, and then shooting him twice in the chest after he was wounded and with his hands raised in surrender, shocks the conscience. Defendant Lamantia acted with deliberate indifference to the constitutional rights of Decedent and Plaintiff, and with a purpose to harm unrelated to any legitimate law enforcement objective. Specifically, the following conduct shocks the conscience:

(a) Shooting a fleeing person in the back without warning;

(b) Shooting a person who has surrendered and raised his hands;

(c) Shooting a person who is unarmed;

(d) Shooting a person who was not suspected of having recently committed a crime involving the infliction or threatened infliction of serious physical harm;

(e) Shooting a person who was not threatening the shooting officer; and

(f) Shooting a person who was not threatening anyone else.

28. Plaintiff brings this claim individually and as the successor in interest to Decedent, and seeks damages for her emotional distress and anguish, wrongful-death damages, including her loss of support and gifts, love, society and companionship, protection, affection, and moral support, and survival damages, including Decedent's pain and suffering, loss of life, and loss of enjoyment of life, and punitive damages as alleged below.

29. The conduct of Defendants Lamantia and Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages.

## THIRD CLAIM FOR RELIEF

Municipal Liability – Failure to Train and Supervise, 42 U.S.C. § 1983

(Against Defendants City, MPD, Carroll and Does)

30. The foregoing allegations are incorporated as if re-alleged herein.

31. Defendants Lamantia and Does deprived Decedent and Plaintiff of their particular rights under the United States Constitution as alleged above.

32. The training and supervision of Defendants Lamantia and Does by Defendants City, MPD and Carroll did not insure that their officers handle the usual and recurring situations with which they must deal in a safe and lawful manner. Defendants City, MPD and Carroll were deliberately indifferent to the obvious consequences of their failure to train and supervise officers adequately. The failure of Defendants City, MPD and Carroll to provide adequate training and supervision caused the deprivation of Decedent's and Plaintiff's rights. The failure to train and supervise was so closely related to the deprivation as to be the moving force causing the ultimate injuries.

33. On information and belief, the MPD did not train Lamantia on the newly enacted AB 392, which amended Cal. Penal Code § 835a. Moreover, prior to Officer Lamantia's shooting of Trevor Seever, the City's decision makers and the entire MPD command staff and chain of command, up to and including Defendant Chief Carroll, knew that Lamantia had a propensity for violence. These Defendants did not take the

necessary steps to prevent the unnecessary shooting of individuals. Defendants City, MPD, Carroll and Does have not taken the necessary steps to prevent officers from using inappropriate tactics, including excessive force, during encounters with individuals. They knew about Lamantia's violent tendencies, as he was directly involved in at least four prior fatal shootings as well as an in-custody death, an extraordinary record for a California police officer.

    (a)    On September 6, 2010, Lamantia shot and killed Francisco Elias Moran.

    (b)    On June 17, 2016, Lamantia and another officer shot and killed Omar Villagomez.

    (c)    On October 8, 2016, Lamantia and two other officers shot and killed Kim Jackson.

    (d)    On October 24, 2016, Lamantia was among several officers who asphyxiated Garrett Schmidt during an arrest.

    (e)    Lamantia, while assigned to a multi-agency task force, was involved in the October 20, 2020 shooting of David Cummings in Stockton.

34. Plaintiff is informed and believes that the City, the MPD and former Chief Carroll knew additional facts about Lamantia that gave them notice of his violent tendencies and unsuitability for police work. Employing him as an officer demonstrated deliberate indifference and a callous disregard for the safety of people with whom he would come in contact.

35. Had Officer Lamantia been adequately trained and supervised, he would have known not to shoot someone in the back, especially without a warning, who was running away, and not to shoot someone who was surrendering. Instead, he would have known to use other tactics, such as using the many other officers who were then responding to set up a perimeter and contain Trevor, or just to follow him.

36. Had the City, MPD, Carroll and Does properly supervised their officers, Officer Lamantia would have been deterred from firing out of concern that his

unconstitutional use of deadly force would have severe consequences on his conditions of employment and expose him to criminal prosecution. To the contrary, Officer Lamantia shot Trevor Seever in the back with impunity, and then again while he was surrendering, believing that Defendants City, MPD and Carroll were more concerned with maintaining good relations with other officers than with discharging their constitutional obligations to protect the public from miscreant and violent officers.

37. Plaintiff brings this claim individually and as the successor-in-interest to Decedent, and seeks damages for her emotional distress and anguish, wrongful-death damages, including her loss of support and gifts, love, society and companionship, protection, affection, and moral support, and survival damages, including Decedent's pain and suffering, loss of life, and loss of enjoyment of life, and punitive damages as alleged below.

38. The conduct of Defendants Carroll and Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

Municipal Liability – Unconstitutional Custom or Policy 42 U.S.C. § 1983

(Against Defendants City, MPD, Carroll and Does)

39. The foregoing allegations are incorporated as if re-alleged herein.

40. Defendants Lamantia and Does deprived Decedent and Plaintiff of their particular rights under the United States Constitution as alleged above.

41. Defendants Lamantia and Does acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendants City, MPD and Carroll.

42. Defendants City and MPD, through their policymakers and supervisors, including former Chief Carroll, maintained, among other things, the following customs, practices, and policies that proximately caused the constitutional deprivations alleged herein:

    (a) Using excessive force, including deadly force without justification;

    (b) Providing inadequate training regarding the use of deadly force, including but not limited to failing to train on the newly enacted AB 392, which amended Cal. Penal Code § 835a;

    (c) Employing individuals such as Defendants Lamantia and Does, whom Defendants City, MPD and Carroll knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force;

    (d) Inadequately supervising, training, controlling, assigning, and disciplining officers and other employees who Defendants City, MPD and Carroll knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

    (e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by officers;

    (f) Failing to adequately discipline officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

    (g) Finding that excessive force is "within policy"; and

    (h) Encouraging, accommodating, or facilitating a "code of silence," under which officers do not report each other's errors, misconduct, or crimes.

43.    Defendants City, MPD and Carroll, together with various officials, whether named or unnamed, had both actual and constructive knowledge of the deficient policies, practices and customs alleged above. Despite having that knowledge, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Defendants thus acted with deliberate indifference to the foreseeable effects and consequences of their policies, practices and customs with respect to the constitutional rights of Decedent, Plaintiff, and other individuals similarly situated.

44. Plaintiff brings this claim individually and as the successor-in-interest to Decedent, and seeks damages for her emotional distress and anguish, wrongful-death damages, including her loss of support and gifts, love, society and companionship, protection, affection, and moral support, and survival damages, including Decedent's pain and suffering, loss of life, and loss of enjoyment of life, and punitive damages as alleged below.

45. The conduct of Defendants Carroll and Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages.

## FIFTH CLAIM FOR RELIEF

Cal. Civ. Code § 52.1 – Survival

(Against All Defendants Lamantia, Does and City)

46. The foregoing allegations are incorporated as if re-alleged herein.

47. The actions of Defendants Lamantia and Does interfered through violence, threats, intimidation and coercion with Decedent's exercise of rights guaranteed by the constitutions and laws of the United States and the State of California, including but not limited to the Fourth Amendment, the Fourteenth Amendment, the protection of Cal. Civ. Code § 43 from bodily harm, the newly enacted AB 392, which amended Cal. Penal Code § 835a, and Art. I §13 of the California Constitution.

48. The aforementioned Defendants intentionally committed these acts to discourage, prevent, or retaliate against Decedent, who was exercising his constitutional right to be free from illegal seizure, and with reckless disregard for and deliberate indifference to Decedent's federal and state statutory and constitutional rights. Defendants acted with the specific intent, or with reckless disregard, to deprive Decedent of his federal and state statutory and constitutional rights.

49. Plaintiff brings this claim on behalf of Decedent as his successor-in-interest, and seeks statutory damages, compensatory and punitive damages, and attorneys' fees, as provided by law.

50. The City is vicariously liable for violations of § 52.1 by its officers pursuant to section 815.2(a) of the California Government Code.

### SIXTH CLAIM FOR RELIEF

Battery – Wrongful Death

(Against All Defendants)

51. The foregoing allegations are incorporated as if re-alleged herein.

52. Defendant Lamantia and Does, while working as MPD officers acting within the course and scope of their duties, intentionally shot Decedent, who died from his injuries.

53. For the reasons alleged above, Defendant Lamantia did not have legal justification for using deadly force against the Decedent, and the use of deadly force against Decedent was unnecessary and objectively unreasonable, and in violation of the newly enacted AB 392, which amended Cal. Penal Code § 835a

54. Plaintiff brings this claim individually and as the successor-in-interest to Decedent, and seeks wrongful-death damages, including her loss of support and gifts, love, society and companionship, protection, affection, and moral support, and survival damages, including punitive damages as alleged below.

55. The conduct of Defendants Lamantia and Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages.

56. The City and MPD are vicariously liable for battery by its officers pursuant to section 815.2(a) of the California Government Code.

### SEVENTH CLAIM FOR RELIEF

Infliction of Emotional Distress

(Against Defendants City, MPD and Does)

57. The foregoing allegations are incorporated as if re-alleged herein.

58. Defendant Lamantia, while working as an MPD officer acting within the course and scope of his duties, intentionally shot Decedent, who died from his injuries.

1  Other MPD officers were tasked with investigating, including gathering information from
2  Plaintiff, her husband and her daughter about what had transpired with Trevor earlier
3  that day. MPD officers entered Plaintiff's home without permission and began searching.
4  They later spoke to Plaintiff for almost an hour knowing that she was under the mistaken
5  belief that her son had survived the shooting, was not in critical condition, and was being
6  treated in the hospital. She felt assured by the officers speaking to her about the events
7  because she believed, incorrectly, that the officers would have told her were her son
8  deceased from the bullet wounds.

59. The officers deliberately chose not to tell Plaintiff that her son was deceased, although they knew he had been pronounced dead about a half hour before the interview began, because they believed it to be to their advantage, and to the advantage of MPD, to search Plaintiff's house, get Plaintiff's statements, and interview her husband and her daughter before telling her that her son had been killed by Lamantia.

60. After the interview, Plaintiff asked her questioner, Officer Martin, whether he had any updates from the hospital. Officer Martin responded, "He didn't make it." Plaintiff reacted, "What?" After Officer Martin repeated the statement, Plaintiff collapsed in grief, shrieking with emotional anguish aggravated by the false sense of security the officers had imparted by withholding that information, and then the sudden realization of her loss. Then, MPD officers falsely informed Darlene that her son's remains were already at the coroner's office where, it turned out, she could not see him for 6 days. In fact Trevor was still at the hospital.

61. The conduct of the involved MPD officers was extreme and outrageous, and beyond the bounds that any civilized society should tolerate. These actions were undertaken with the intent to cause severe emotional distress, and with reckless disregard for their consequences on Plaintiff's emotions. Plaintiff suffered severe emotional distress as a proximate result.

62. The City and MPD are vicariously liable for the wrongful conduct of its officers pursuant to section 815.2(a) of the California Government Code.

# PRAYER

WHEREFORE, Plaintiff requests relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in amounts according to proof;
2. Special damages in amounts according to proof;
3. Exemplary and punitive damages against Defendant Lamantia, each Doe defendant, and former Chief Carroll, but not against the City or MPD, in amounts according to proof;
4. Costs of suit, including attorneys' fees under both federal and state fee shifting statutes; and,
5. Such other relief as may be warranted or as is just and proper.

Dated:   October 19, 2021                FORES - MACKO - JOHNSTON, INC.

By:  ___/s/Robert P. Fores___
Robert P. Fores

THE LAW OFFICES OF JOHN BURTON

By:  ___/s/ John Burton___
John Burton
Attorneys for Plaintiff Darlene Ruiz

# DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Dated:   October 19, 2021                FORES - MACKO - JOHNSTON, INC.

By:  ___/s/Robert P. Fores___
Robert P. Fores

THE LAW OFFICES OF JOHN BURTON

By:  ___/s/ John Burton___
John Burton
Attorneys for Plaintiff Darlene Ruiz